SD:ABK/TRP
F.#2015R00829

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

− − − − − − − − − − − − −X

UNITED STATES OF AMERICA

    - against -

JONATHAN GREENSTEIN and
REBECCA JOSEPH,

          Defendants.

− − − − − − − − − − − − −X

**TO BE FILED UNDER SEAL**

AFFIDAVIT AND COMPLAINT IN
SUPPORT OF AN APPLICATION
FOR AN ARREST WARRANT

(T. 21, U.S.C., §§ 841(b)(1)(C) and 846)

15-M-727

EASTERN DISTRICT OF NEW YORK, SS:

      JOSEPH BARBATO, being duly sworn, deposes and states that he is a Diversion Investigator with the Drug Enforcement Administration ("DEA"), duly appointed according to law and acting as such.

      Upon information and belief, in or about and between November 2011 and July 2012, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JONATHAN GREENSTEIN and REBECCA JOSEPH, together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance, which offense involved a substance containing oxycodone, a Schedule II controlled substance, in violation of Title 21 U.S.C. § 841(a)(1).

      (Title 21, United States Code, Sections 841(b)(1)(C) and 846)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.     I am a Diversion Investigator with the DEA and have been so employed for approximately 25 years.   My primary responsibility is to investigate the diversion of legally-manufactured controlled substances into the illicit market.   I have experience investigating cases in which Schedules II through V controlled substances have been purchased from complicit doctors and medical professionals and sold, directly and indirectly, to abusers of those substances.   I have also been involved in numerous investigations involving the diversion of legitimate pharmaceutical drugs for recreational use.   Through this experience, I have investigated the theft of prescription pads, the diversion of controlled substances, the forgery of prescriptions and "prescription shopping" cases, i.e., cases in which an individual visits one or more doctors and obtains multiple prescriptions for a controlled substance.

2.     I am familiar with the facts and circumstances set forth below from my personal participation in the investigation described herein, my review of investigative files, and from reports of other law enforcement officers involved in the investigation.   Where the contents of documents, or the actions, statements and conversations of others are reported herein, they are reported in sum and substance and in part, except where otherwise indicated.

---

[1]  Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

3.      The DEA is investigating JONATHAN GREENSTEIN, REBECCA

JOSEPH and others for conspiring to distribute and possessing with the intent to distribute

oxycodone, a Schedule II controlled substance.   Specifically, the defendants participated in a

prescription drug-diversion operation from a physician's medical practice located in Forest

Hills, New York (hereinafter, "Doctor #1"), the identity of which is known to the undersigned

Affiant.

4.      According to records obtained from Doctor #1, JOSEPH was employed

at the medical practice of Doctor #1 from approximately May 20, 2009 through September 3,

2009 and from approximately November 21, 2011 through July 6, 2012.   GREENSTEIN was

employed by the medical practice of Doctor #1 from approximately March 12, 2012 through

July 23, 2012.

5.      A review of prescription data for Doctor #1 from the New York State

Department of Health, Bureau of Narcotic Enforcement ("BNE") revealed a large increase in

the number of oxycodone prescriptions written by Doctor #1 during the periods that both

GREENSTEIN and JOSPEH were employed by Doctor #1.   For example, a comparative

analysis conducted by the undersigned Affiant of the BNE data for Doctor #1 revealed that

from January 2011 through July 2011, Doctor #1 wrote approximately 224 prescriptions for

oxycodone, totaling approximately 23,270 pills of oxycodone; GREENSTEIN and JOSEPH

were not employed at the medical practice of Doctor #1 during that time period.   However,

from January 2012 through July 2012, a period during which GREENSTEIN and JOSEPH

were at times both employed at the medical practice of Doctor #1, Doctor #1 wrote

approximately 1,388 prescriptions for oxycodone, totaling approximately 102,227 pills of

oxycodone.   This represented an increase of nearly 340 percent over the preceding year.

6.    The investigation has revealed that GREENSTEIN and JOSEPH,

together with others, recruited individuals to visit Doctor #1 and complain of pain and other

ailments for the purpose of obtaining prescriptions for oxycodone, which prescriptions, or

oxycodone pills obtained with such prescriptions, were in turn provided to GREENSTEIN and

JOSEPH in exchange for money.

7.    For example, a confidential source ("CS-1"),[2] whose identity is known

to the undersigned Affiant, advised law enforcement agents that s/he met "John" and "Becca"

during CS-1's visit to Doctor #1's office in 2012.   CS-1 was taken to Doctor #1's office by an

individual, referred to herein as a "CS-2,"[3] whose identity is known to the undersigned

Affiant.   According to CS-1, GREENSTEIN stated that he wanted to build patient clientele

for the medical practice of Doctor #1 and that GREENSTEIN would pay CS-1 around $25 to

$50 for each person CS-1 could bring to the medical practice.

8.    CS-1 further stated that s/he recruited people from homeless shelters to

obtain oxycodone prescriptions from Doctor #1 and provide CS-1 signed prescriptions.   CS-1

---

[2] On or about February 4, 2015, CS-1 pleaded guilty, pursuant to a cooperation agreement, in
the Eastern District of New York to conspiracy to distribute oxycodone, in violation 21 U.S.C.
§§ 841(b)(1)(C) and 846.   CS-1 is cooperating in the hopes of obtaining leniency at
sentencing.   CS-1's information has been reliable thus far and has been corroborated by other
evidence.

[3] On or about February 26, 2015, CS-2 was arrested in connection with the prescription drug
diversion scheme described herein.   CS-2's information has been reliable thus far and has
been corroborated by other evidence.

also stated that GREENSTEIN repeatedly gave CS-1 money to fill oxycodone prescriptions and that CS-1 then provided oxycodone pills, directly or indirectly, to CS-2, who in turn, paid CS-1 approximately $50 in exchange on each occasion.   Notably, prescription data associated with Doctor #1 received from the BNE confirms that CS-1 received oxycodone prescriptions issued by Doctor #1 between approximately January 2012 and July 2012.

       9.     In post-arrest statements to law enforcement authorities, CS-2 stated that s/he recruited people from homeless shelters and parts of Brooklyn to visit Doctor's #1's office and that for each person CS-2 brought to the office, JOSEPH paid CS-2 approximately $30 or $40 per patient that CS-2 recruited.

       10.     Law enforcement agents interviewed one such individual that CS-2 recruited to visit Doctor #1's office, referred to herein as "CS-3," whose identity is known to the undersigned Affiant.[4]   CS-3 stated that an individual that s/he positively identified as CS-2 asked CS-3 if CS-3 wanted to "make some money," to which CS-3 responded in the affirmative.   CS-3 explained that s/he was requested to visit Doctor #1's office and obtain a prescription for oxycodone.   CS-3 stated that s/he complied and was paid $100 for each oxycodone prescription.   CS-3 further stated CS-2 paid for CS-3's office visit and to have the prescription filled.   Once filled, CS-3 turned the oxycodone pills over to CS-2 and, on at least two occasions, CS-3 turned over oxycodone prescriptions to an individual CS-3 positively identified as JOSEPH, for which CS-3 received payment.

---

[4] CS-3's information has been reliable thus far and has been corroborated by other evidence.

11.     In addition, law enforcement agents interviewed the Supervising Pharmacist/owner ("CS-4") of a pharmacy in Queens, New York ("Pharmacy #1"), the identities of which are known to the undersigned Affiant.[5]   According to CS-4, GREENSTEIN regularly faxed to Pharmacy #1 prescriptions for oxycodone purportedly written by Doctor #1 to be filled by Pharmacy #1.   CS-4 advised that GREENSTEIN would personally collect filled prescriptions for oxycodone that had been faxed to Pharmacy #1. CS-4 reported that s/he never otherwise had a doctor's office fax prescriptions to be later picked up by, and dispensed from, the doctor's office.   In addition, law enforcement agents obtained from CS-4 copies of approximately 400 prescriptions, purportedly signed by Doctor #1, together with fax cover sheets, that were faxed to Pharmacy #1 by or on behalf of GREENSTEIN.

12.     After reviewing these prescriptions, agents located, among others, an individual referred to herein as a "CS-5," whose identity is known to the undersigned Affiant.[6] CS-5 advised agents that s/he had never been a patient of Doctor #1 and had never filled a prescription at Pharmacy #1.   CS-5 was then shown a copy of a prescription purportedly issued by Doctor #1 bearing CS-5's name, date of birth and address.   After reviewing the prescription, CS-5 reiterated that s/he never had been a patient of Doctor #1 and that s/he never visited Pharmacy #1.

---

[5] CS-4's information has been reliable thus far and has been corroborated by other evidence.

[6] CS-5's information has been reliable thus far and has been corroborated by other evidence.

13.     Additionally, based on prescriptions obtained from CS-4, agents also located an individual referred to herein as a "CS-6," whose identity is known to the undersigned Affiant.[7]   CS-6 stated that s/he was a patient of Doctor #1, but that CS-6 was never issued a prescription for oxycodone from Doctor #1.   CS-6 also stated that s/he never provided anyone his/her prescriptions to be filled on his/her behalf and that s/he did not fill any prescriptions at Pharmacy #1.   Notably, a review of patient information associated with CS-6 provided to law enforcement agents by Doctor #1 confirms that CS-6 was a patient of Doctor #1 from approximately June 2011 through June 15, 2012 and that Doctor #1 never prescribed oxycodone to CS-6.   According to information received from Pharmacy #1, GREENSTEIN filled a prescription for oxycodone, dated June 25, 2012, on behalf of CS-6 at Pharmacy #1. However, according to patient information received from Doctor #1, CS-6's last visit to Doctor #1 was ten days earlier, on June 15, 2012.

14.     CS-2 stated that s/he repeatedly met with GREENSTEIN in parking lots near pharmacies and observed GREENSTEIN with several prescriptions at a time.   On at least one occasion, CS-2 gave GREENSTEIN a prescription issued to CS-2 so that GREENSTEIN could fill the prescription on behalf of CS-2.

WHEREFORE, your deponent respectfully requests that arrest warrants be issued so that defendants JONATHAN GREENSTEIN and REBECCA JOSEPH be dealt with according to law.

---

[7] CS-6's information has been reliable thus far and has been corroborated by other evidence.

IT IS FURTHER REQUESTED that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and arrest warrant.   Based upon my training and experience, I have learned that criminals actively search for criminal affidavits via the Internet, and disseminate them to other criminals as they deem appropriate, e.g., by posting them publicly through online forums. Therefore, premature disclosure of the contents of this affidavit and related documents will seriously jeopardize the investigation, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, and notify confederates.

JOSEPH BARBATO
Diversion Investigator
Drug Enforcement Administration

Sworn to before me this
4th day of August, 2015

S. Ramon E. Reyes

THE HONORABLE RAMON E. REYES, JR.
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

8